IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

CHARLES HAMNER, ADC #143063                                                   PLAINTIFF

v.                      CASE NO. 2:22-CV-00076-DPM-ERE

REX LAY, et al.                                                                     DEFENDANTS

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

The Arkansas Division of Correction ("ADC") Defendants, Rex Lay, Christopher Johnson, Michael Richardson, Kenyon Randle, Marcus Etherly, and William Straughn, by and through their attorneys, Attorney General Leslie Rutledge, and Assistant Attorney General Rosalyn Middleton, submit the following Statement of Facts:

1.       Plaintiff, Charles Hamner (ADC #143063) is an inmate in the custody of the ADC at its East Arkansas Regional Unit located in Marianna, Arkansas. (*See* Doc. No. 2, at 1, 3).

2.       Plaintiff initiated this lawsuit on May 9, 2022, with the filing of a *pro se* complaint, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights. (*See* Doc. No. 2, file marked May 9, 2022).

3.       Plaintiff specifically alleges that the Defendants have been deliberately indifferent to his health by denying him outdoor recreation. (*See* Doc. No. 8, at 1; Doc. No. 37, at 2).

4.       The Defendants have denied the allegations against them. (*See* Doc. No. 20).

5.       Terri Grigsby Brown is the Inmate Grievance Supervisor for the ADC. Her job responsibilities include responding to non-medical inmate grievance appeals for the current and former ADC Chief Deputy Directors and Assistant-Directors. (Ex. A, Declaration of Terri Grigsby Brown, ¶ 2).

6. The ADC has an inmate grievance policy. During the timeframe referenced by Plaintiff in his complaint, Administrative Directive 19-34 was the ADC's Inmate Grievance Policy. (Ex. A, ¶ 4; Ex. B, Administrative Directive 19-34, Inmate Grievance Procedure).

7. Administrative Directive 19-34 informs the inmates that the following issues are non-grievable: (1) parole; (2) release; (3) transfer; (4) job assignments unless in conflict with medical restrictions; (5) disciplinaries; (6) anticipated events; (7); matters beyond the control of the ADC; and (8) rejection of a publication. (Ex. A, ¶ 5; Ex. B, § III(H)).

8. The ADC's inmate grievance policy informs the inmates that they "must specifically name each individual involved in order that a proper investigation and response may be completed." (Ex. A, ¶ 6; Ex. B, § IV(C)(4)).

9. The ADC's grievance policy also informs the inmates that only one problem/issue should be stated in their grievance, not multiple problems/issues. The inmates are instructed that they must use a separate form for each issue. (Ex. A, ¶ 7; Ex. B, § IV(D)(2)).

10. The ADC's grievance policy warns the inmates that only one issue will be addressed in their grievance and that additional problems/issues contained in the grievance will not be considered as exhausted. (Ex. A, ¶ 8; Ex. B, § IV(D)(2)).

11. The ADC's inmate grievance policy instructs the inmates that when submitting a grievance; the grievant must "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (Ex. A, ¶ 9; Ex. B, § IV(E)(2)).

12. Pursuant to the ADC's inmate grievance policy, an inmate is required to fully comply with all other provisions of the ADC inmate grievance policy in order to fully exhaust

administrative remedies as required by the Prison Litigation Reform Act. (Ex. A, ¶ 10; Ex. B, § IV(N)).

13. The ADC's inmate grievance procedure is a three-step process. (Ex. A, ¶ 11; Ex. B, § IV).

14. Step One, the Informal Resolution Procedure, requires inmates to first seek an informal resolution by submitting a Unit Level Grievance Form within fifteen days of the alleged incident to the designated problem solver. Depending on the inmate's particular issue, the designated problem-solver will either meet with the inmate within three working days to resolve the issue; meet with the inmate immediately if the issue is an emergency; refer the issue to the Health Services Administrator; or refer the issue to the Mental Health Supervisor. (Ex. A, ¶ 12; Ex. B, §§ IV(E)(1), (3), & (4)).

15. The ADC inmate grievance policy instructs the inmates that if the designated problem-solver fails to contact an inmate and attempt resolution of the complaint or fails to return Step-One within the three designated working days, the inmate may proceed to Step-Two. When this occurs, the Step-Two, formal grievance, must be filed no later than six working days from the submission of the Unit Level Grievance Form, pursuant to Step-One. (Ex. A, ¶ 13; Ex. B, § IV(E)(11)).

16. Due to excessive submissions causing a delay in processing inmate grievances, the inmates are limited to five Step One, Informal Resolutions per seven-day period. Only the first five Step One, Informal Resolutions will require a response. Each seven-day period begins on Saturday and ends on Friday. (Ex. A, ¶ 14; Ex. B, § IV(J)(1)(a)).

17. After attempting to resolve their issue through Step One, an inmate may proceed to Step Two, the Formal Grievance Procedure, by filing a formal grievance on the same unit level grievance form used during Step One. (Ex. A, ¶ 15; Ex. B, § IV(F)).

18. The ADC's inmate grievance policy instructs the inmates that to "complete the date beside 'Step Two: Formal Grievance' and the section regarding resubmission (of this form) as to why the inmate considers the informal resolution unsuccessful, and to deposit it into the designated grievance box or submit it to a staff member." (Ex. A, ¶ 16; Ex. B, § IV(F)(1)).

19. The policy warns the inmates that additional sheets cannot be attached to the Unit Level Grievance Form and only information in the space provided will be considered part of their grievance submission. The policy also warns the inmates that new issues cannot be added to the form and will not be considered. (Ex. A, ¶ 17; Ex. B, § IV(F)(2)).

20. Upon receipt, the Grievance Officer will complete the box "for office use only" on the Unit Level Grievance form by assigning a number to the grievance and logging the date the grievance was received, inmate's name, ADC number, type of grievance, and the text of the inmate's complaint into eOMIS. (Ex. A, ¶ 18; Ex. B, § IV(F)(3)).

21. The Grievance Officer will then transmit an Acknowledgment or Rejection of the Unit Level Grievance Form to the inmate within five (5) working days after receipt. (Ex. A, ¶ 19; Ex. B, § IV(F)(4)).

22. Inmates are allowed to submit three Step Two, formal grievances during a seven day period. A new seven day period begins each Saturday and ends on the following Friday. Only the first three formal grievances submitted by an inmate require an investigation and response. This limit includes nonmedical, medical, and mental health grievances. (Ex. A, ¶ 20; Ex. B, § IV(J)(1)(b)).

23. Formal grievances that are filed after an inmate reaches the limit are logged and reviewed to determine if an emergency exists.  If no emergency exits, the grievance will be logged out on the same day it was received and it shall be written on the Unit Level Grievance Form "No action necessary-exceeds weekly limit," dated, and signed.  The original grievance is then placed in the grievance file and no other response will be given to the inmate.  (Ex. A, ¶ 21; Ex. B, § IV(J)(1)(b)).

24. The inmate will receive a response to the formal grievance from the warden or warden's designee within twenty working days.  (Ex. A, ¶ 22; Ex. B, § IV(F)(7)).

25. If the inmate is not satisfied with the warden's response, the inmate may file an appeal within five days to the Chief Deputy/Deputy/Assistant Director.  (Ex. A, ¶ 23; Ex. B, § IV(G)).

26. The inmate may also file an appeal if the warden fails to respond to the Step Two within twenty days. (Ex. A, ¶ 24; Ex. B, § IV(F)(9)).

27. An inmate's appeal must be written in the space provided on the original Warden/Center Supervisor's Form, the Health Services Response to the Unit Level Grievance Form or the Acknowledgement or Rejection of Unit Level Grievance Form.  (Ex. A, ¶ 25; Ex. B, § IV(G)(1)).

28. The ADC inmate grievance policy informs the inmates that only what is written in the space provided for appeal will be considered part of the grievance appeal and that additional sheets should not be attached and will be returned to the inmate upon receipt of the appeal or as soon as practical.  (Ex. A, ¶ 26; Ex. B, § IV(G)(1)).

29. The inmate must include the original Unit Level Grievance Form and either the Warden's Decision Form or the Acknowledgement or Rejection of the Unit Level Grievance with

his appeal. If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. (Ex. A, ¶ 27; Ex. B, § IV(G)(2)).

30. To complete their appeal, the inmate must state a reason for disagreeing with the decision; date; sign; and write his ADC number on the attachment being appealed. The inmates are instructed not to list any additional issues, requests and/or names which were not part of the original grievance, as they will not be addressed on appeal. (Ex. A, ¶ 28; Ex. B§ IV(G)(2)).

31. The entire grievance procedure should be complete within seventy-six working days unless an extension has been executed or unforeseen circumstances have occurred. (Ex. A, ¶ 29; Ex. B, § IV(G)(9).

32. The ADC inmate grievance policy instructs the inmates that if, at any level of the inmate grievance process, the inmate fails to receive a response to his grievance within the allotted timeframe the inmate may proceed to the next level of the process. (Ex. A, ¶ 30; Ex. B, § IV(E)(11) & (F)(9)).

33. The ADC grievance policy explicitly informs the inmates that they must exhaust their administrative remedies as to all defendants at all levels of the grievance process before filing a Section 1983 lawsuit or their lawsuit or claims may be dismissed immediately pursuant to the exhaustion requirements of the Prison Litigation Reform Act. (Ex. A, ¶ 31; Ex. B, §§ IV (C) & (N)).

34. Pursuant to Administrative Directive 19-34, to fully exhaust administrative remedies, the inmates are required to timely file an informal resolution, a formal grievance at the unit level, and a grievance appeal to the Assistant and/or Deputy Director's level and receive a decision addressing the allegations contained in the grievance at each level as detailed in the ADC's inmate grievance policy. (Ex. A, ¶ 32; Ex. B, § IV).

35.     Mrs. Brown reviewed Plaintiff's non-medical grievance appeal files and grievance history.  During her review, she searched for any exhausted non-medical grievances filed from October 1, 2021, through May 9, 2022, pertaining to Plaintiff's claims in the present lawsuit.  She also searched for any exhausted non-medical grievances, filed from October 1, 2021, through May 9, 2022, that specifically named or referred to the Defendants. (Ex. A, ¶¶ 33 & 34; Ex. C, Grievance History for Charles Hamner (ADC #143063).

36.     During her review, Mrs. Brown found that Plaintiff filed five grievances, EAM22-00643, EAM22-00747, EAM22-00757, EAM22-00787, and EAM22-00839, pertaining to his claims in this lawsuit.  (Ex. A, ¶ 36; Ex. D, Grievance EAM22-00643; Ex. E, Grievance EAM22-00747; Ex. F, Grievance EAM22-00757; Ex. G, Grievance EAM22-00787, and Ex. H, Grievance EAM22-00839).

37.     According to the envelope attached to Plaintiff's complaint, his complaint was mailed on May 5, 2022.  (Doc. No. 2, at 74).

38.     Plaintiff exhausted grievances EAM22-00643, EAM22-00747, EAM22-00757, EAM22-00787, and EAM22-00839 after he commenced this lawsuit.  (Ex. A, ¶¶ 41, 46, 51, 56, 7 61; Ex. D, at 5; Ex. E, at 5; Ex. F, at 5; Ex. G, at 5; Ex. H, at 6).

39.     Plaintiff commenced grievance EAM22-00643 on April 4, 2022.  In the grievance he complains that yard call was not being conducted in accordance with ADC policy.  Plaintiff also names or refers to Defendants Lay, Johnson, Richardson, and Randle in the grievance.  (Ex. A, ¶ 37; Ex. D, at 1).

40.     The warden found that grievance EAM22-00643 did not have merit.  (Ex. A, ¶ 38; Ex. D, at 2).

41. Plaintiff disagreed with the warden's decision and appealed his decision to the Chief Deputy/Deputy/Assistant Director. (Ex. A, ¶ 39; Ex. D, at 2).

42. On May 9, 2022, after reviewing Plaintiff's appeal and supporting documentation, the Chief Deputy/Deputy/Assistant Director concurred with the warden's response to grievance EAM22-00643 and denied Plaintiff's appeal. (Ex. A, ¶ 40; Ex. D, at 5).

43. Mrs. Brown states that Plaintiff exhausted his administrative remedies with respect to grievance EAM22-00643 on May 9, 2022. (Ex. A, ¶ 41).

44. Plaintiff commenced grievance EAM22-00747 on April 18, 2022. In the grievance, he complains that he is being denied outdoor exercise. He names Defendants Straughn, Lay, Johnson, Richardson, and Randle in the grievance. (Ex. A, ¶ 42; Ex. E, at 1).

45. In his written response to grievance EAM22-00747, the warden informed Plaintiff that the issue had been addressed in grievance EAM22-00643. (Ex. A, ¶ 43; Ex. E, at 3).

46. Plaintiff disagreed with the warden's decision and appealed his decision to the Chief Deputy/Deputy/Assistant Director. (Ex. A, ¶ 44; Ex. E, at 3).

47. On June 6, 2022, after reviewing Plaintiff's appeal and supporting documentation, the Chief Deputy/Deputy/Assistant Director found that Plaintiff was last offered yard call on March 14, 2022, and that Plaintiff refused his yard call. Because the unit did not provide documentation as to why yard call was not conducted, the Chief Deputy/Deputy/Assistant Director found that Plaintiff's appeal of grievance EAM22-00747 had merit. (Ex. A, ¶ 45; Ex. E, at 5).

48. Mrs. Brown states that Plaintiff exhausted his administrative remedies with respect to grievance EAM22-00747 on June 6, 2022. (Ex. A, ¶ 46).

49.     Plaintiff commenced grievance EAM22-00757 on April 20, 2022. In the grievance he again complains about not receiving yard call. He only names Defendant Johnson in the grievance. (Ex. A, ¶ 47; Ex. F, at 1).

50.     The warden responded to grievance EAM22-00757, on May 11, 2022. The warden wrote the following in his response:

> According to AD 2021-15 Restrictive Housing, inmates will have opportunity for exercise, a minimum of one (1) hour of exercise per day, five (5) days per week, unless security or safety dictates otherwise. Currently staff vacancies dictate that yard call will be ran when staff is available to run yard. Even though yard is not ran every day in every cellblock an effort is being made to where yard is ran every day. This issue has been addressed in #EAM222-00643. Please refer to that answer. This should address your concerns.

(Ex. A, ¶ 48; Ex. F, at 2).

51.     Plaintiff disagreed with the warden's response and filed an appeal with the Chief Deputy/Deputy/Assistant Director. (Ex. A, ¶ 49; Ex. F, at 2).

52.     On June 6, 2022, after reviewing Plaintiff's appeal and supporting documentation, the Chief Deputy/Deputy/Assistant Director again found that Plaintiff was last offered yard call March 14, 2022, and that he refused yard call. Because the unit did not provide documentation as to why yard call was not conducted, the Chief Deputy/Deputy/Assistant Director found that Plaintiff's appeal of grievance EAM22-00757 had merit. (Ex. A, ¶ 50; Ex. F, at 5).

53.     Mrs. Brown states that Plaintiff exhausted his administrative remedies with respect to grievance EAM22-00757 on June 6, 2022. (Ex. A, ¶ 51).

54.     Plaintiff commenced grievance EAM22-00787 on April 25, 2022. In the grievance, he complains that "Warden Lay, Major K. Randle, Deputy Warden M. Richardson, Deputy Warden C. Johnson, Capt. M. Etherly are keeping me confined to my cell 24 hours per day 7 days

9

per week for weeks and months at a time with no relief." He states that they do not conduct yard call for weeks and months at a time. (Ex. A, ¶ 52; Ex. G, at 1).

55. In his written response to grievance EAM22-00787, the warden wrote:

> According to AD 2021-15 Restrictive Housing, inmates will have opportunity for exercise, a minimum of one (1) hours of exercise per day, five (5) days per week, unless security or safety dictates otherwise. Currently staff vacancies indicate that yard will be ran when staff is available to run yard. Even though yard is not ran every day in every cellblock an effort is being made to where yard is ran every day. This should address your concerns.

(Ex. A, ¶ 53; Ex. G, at 2).

56. Plaintiff was not satisfied with the warden's response to grievance EAM22-00787 and filed an appeal to the Chief Deputy/Deputy/Assistant Director. (Ex. A, ¶ 54; Ex. G, at 2).

57. On June 13, 2022, after reviewing Plaintiff's appeal, the Chief Deputy/Deputy/Assistant Director found that Plaintiff did not provide enough information so as to determine whether he was not allowed to have yard call. The Chief Deputy/Deputy/Assistant Director, therefore, did not address the merits of Plaintiff's appeal of grievance EAM22-00787. (Ex. A, ¶ 55; Ex. G, at 5).

58. Mrs. Brown states that Plaintiff exhausted his administrative remedies with respect to grievance EAM22-00787 on June 13, 2022. (Ex. A, ¶ 56).

59. Plaintiff commenced grievance EAM22-00839 on May 4, 2022. In the grievance he complains that yard call had not been conducted in cellblock 2 since March 14, 2022. He specifically names Defendants Lay, Richardson, Johnson, Randle, and Etherly in the grievance. (Ex. A, ¶ 57; Ex. H, at 1).

60. In his response to grievance EAM22-00839, the warden wrote the following:

> According to AD 21-15, Restrictive Housing, an inmate will have the opportunity for exercise, a minimum of one (1) hour of exercise

10

> per day, (5) days per week, unless security, or safety dictates otherwise. Yard calls are conducted in the MAX weekly. Although yard calls are not run every day, an attempt is being made to run yard as much as staffing issues allow. However, Deputy Warden Richardson stated yard call has been withheld due to construction of new yard pens for Max 2, 4, 6, and 8 barracks. Yard call will resume in your area when the construction is complete. This should address your concerns.

(Ex. A, ¶ 58; Ex. H, at 3).

61. Plaintiff was not satisfied with the warden's response and filed an appeal to the Chief Deputy/Deputy/Assistant Director. (Ex. A, ¶ 59; Ex. H, at 3).

62. On July 12, 2022, after reviewing Plaintiff's appeal and supporting documentation, the Chief Deputy/Deputy/Assistant Director concurred with the warden's response to grievance EAM22-00839 and denied Plaintiff's appeal. (Ex. A, ¶ 60; Ex. H, at 6).

63. Mrs. Brown states that Plaintiff exhausted his administrative remedies with respect to grievance EAM22-00839 on July 12, 2022. (Ex. A, ¶ 61).

64. Mrs. Brown explained that the ADC inmate grievance policy explicitly informs inmates that they must exhaust their administrative remedies as to all defendants at all levels of the grievance process before filing a Section 1983 lawsuit or their lawsuit or claims may be dismissed immediately pursuant to the exhaustion requirements of the Prison Litigation Reform Act. (Ex. A, ¶ 62; Ex. B, IV (C) & (N)).

65. Mrs. Brown also explained that, pursuant to the ADC's inmate grievance policy, to fully exhaust administrative remedies, the inmates are required to timely file an informal resolution, a formal grievance, and a grievance appeal to the Chief Deputy/Deputy/Assistant Director level and receive a decision addressing the allegations contained in the grievance at each level as detailed in the ADC inmate grievance policy. (Ex. A, ¶ 63; Ex. B, §IV).

66. Because Plaintiff exhausted grievances EAM22-00643, EAM22-00747, EAM22-00757, EAM22-00787, and EAM22-00889 after he filed this lawsuit, he failed to exhaust his administrative remedies pursuant to the ADC's inmate grievance policy with respect to these five grievances. (Ex. A, ¶ 64).

67. During her review, Mrs. Brown also found grievance EAM21-02078 that names Defendant Lay. (Ex. A, ¶ 65; Ex. I, Grievance EAM21-02078").

68. Grievance EAM21-02078 does not pertain to Plaintiff's claims in the present lawsuit. (Ex. A, ¶ 66).

69. Plaintiff commenced grievance EAM21-02078 on October 17, 2021. In the grievance he complains that a representative from mental health was not present at his October 13, 2021 classification hearing. (Ex. A, ¶ 67; Ex. I, at 1).

70. Mrs. Brown also found grievance EAM21-02224 that names or refers to Defendants Richardson and Randle. (Ex. A, ¶ 68; Ex. J, Grievance EAM21-02224).

71. Grievance EAM21-02224 does not pertain to Plaintiff's claims in the present lawsuit. (Ex. A, ¶ 69).

72. Plaintiff commenced grievance EAM21-02224 on November 26, 2021. In the grievance he complains that Deputy Warden Richardson used profane language towards him during his November 17, 2021 classification hearing. He also complains about being housed in the quarantine cell block at the unit. (Ex. A, ¶ 70; Ex. J, at 1).

73. Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit against the Defendants, his claims against the Defendants should, therefore, be dismissed.

**WHEREFORE**, the Defendants, respectfully request that their Motion for Summary Judgment be granted, and they be dismissed as defendants in this matter.

Respectfully submitted,

Leslie Rutledge
Attorney General


By: *Rosalyn Middleton*
Rosalyn Middleton
Arkansas Bar No. 2001257
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Telephone: (501) 682.8122
Fax: (501) 682.2591
rosalyn.middleton@arkansasag.gov

*Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

I, Rosalyn Middleton, Assistant Attorney General, do hereby certify that on September 8, 2022, I mailed the foregoing document by United States Postal Service to the following non CM/ECF participant.

Charles Hamner, ADC #143063
ADC-East Arkansas Regional Unit
Post Office Box 970
Marianna, AR  72360

*Rosalyn Middleton*